UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER LEE | : | CIVIL ACTION NO: |
| | : | |
| V. | : | |
| | : | |
| ONESOURCE INFORMATION | : | |
| SERVICES, INC. | : | DECEMBER 17, 2004 |

## COMPLAINT

**FIRST COUNT**   (**Family Medical Leave Act, 29 U.S.C. § 2617 (a)(1)(A)(iii), entitlement claim**)

### Jurisdiction and Venue

1.      This case alleges a claim under the Family Medical Leave Act, 29 U.S.C. 2617 et seq., and state statutory and common law claims.  Jurisdiction for the federal question is federal question jurisdiction.  28 U.S.C. § 1331.

2.      Venue is proper because the claims arose in this district and the plaintiff resides in this district. 28 U.S.C. § 1391(b).

3.      Supplemental jurisdiction over the plaintiff's state law statutory and common law claims is invoked pursuant to 28 U.S.C. § 1367, as the claims arose out of the same transaction and occurrences as the plaintiff's federal claims.

### Plaintiff

4.      At all times herein mentioned the plaintiff, Peter Lee, was a resident of the Town of

Salem and State of Connecticut.

### Defendant

5.	At all times herein mentioned the defendant, OneSource Information Services, Inc., was a corporation organized under the laws of the State of Delaware with a principle office location in Concord, Massachusetts.  The defendant was also operating and doing business in the State of Connecticut.

### Preliminary Statement

6.	Plaintiff seeks to recover damages a result of the defendant's actions in terminating plaintiff's employment as a result of plaintiff's request and need for medical leave, and the need for benefits under the Connecticut Worker's Compensation Act in violation of The Family Medical Leave Act, 29 U.S.C. § 2601 et al, and state statute and common law.

### Facts

7.	The plaintiff, Peter Lee, began employment at defendant OneSource Information Services, Inc. on or about January 16, 2001, and worked for the defendant continuously until he was terminated on July 17, 2003.   The plaintiff is an "eligible" employee under the Family Medical Leave Act, 29 U.S.C. § 2611(2).

8.	At all relevant times, the defendant employed over 50 persons.  The defendant is an employer under the Family Medical Leave Act, 29 U.S.C. § 2611(4).

9.      At all relevant times, the defendant was in the business of selling information to customers.  The defendant's customers typically contract with the defendant for the right to use the information and data-bases provided by the defendant.

10.     At all relevant times, the plaintiff was a salesman for defendant.  His title was Strategic Account Manager.  His job duties included selling to large financial institutions such as commercial banks, and large venture capitalist firms.

11.     At all relevant times, the plaintiff was compensated by salary plus commission.

12.     For 2001 the plaintiff's gross pay was $109,549.79.  For 2002 the plaintiff's gross pay was $105,106.18.  For 2003 for the pay period ending at the plaintiff's termination, the plaintiff's gross pay was $90,802.18.  At all times he also had a full benefits plan which included health, drug plan, pre-tax contribution for health care, vision, short term disability, long term disability, dental, life insurance, 401K, stock option, stock purchase 423 plan, paid vacation, tuition reimbursement, employee referral bonus, sick days, paid holidays, floating holiday, and bereavement.

13.     On or about June 17, 2003 while the plaintiff was working for the defendant, the plaintiff injured his back.  He was on the late morning train en route from southeastern Connecticut to New York City.  He was on his way to a business meeting in New York City between his sales team and their customer J.P. Morgan Chase.

14.     On that same day, between 10:15 and 10:20a.m., after the plaintiff's train arrived in New York the Plaintiff reported to work at the defendant's New York offices.

15.     On that same day at about 10:20a.m. the plaintiff informed his supervisor and some relevant co-workers of his back injury.

16.     On that same day due to the back injury the plaintiff was in an acute stage and in intense pain.

17.     On that same day the pain associated with the plaintiff's back injury prevented him from attending the business meeting with J.P. Morgan Chase for which the plaintiff was traveling to New York to attend.

18.     On that same day shortly before 10:30a.m. the pain required him to lie on the floor in one of the offices in New York for a period of time.

19.     On that same day between about 10:20a.m. and 2:00p.m. the plaintiff informed his supervisor and co-workers of his injury, the need for immediate medical care, the fact that he would not be at the J.P. Morgan meeting, and the fact that he was returning home to Connecticut to see his doctor.

20.     On that same day at about 3:45p.m. the plaintiff arrived at the train station in Connecticut and returned home that day after getting medication.

21.     On or about June 18, 2003 the plaintiff informed the defendant that he was taking

medical leave due to his back injury.

22.     Between June 19, 2003 and June 25, 2003 the plaintiff again informed the defendant of his request for medical leave and kept the defendant informed of his medical status, appointments, and prognosis, including the probable need steroid injections, disc-o-grams, and surgery.

23.     On June 25, 2003 Doug Meyer, the plaintiff's supervisor, told the plaintiff that the fact that he was taking medical leave would not affect his position on the sales team.

24.     The plaintiff relied on the statements of Doug Meyer as he took time off for medical leave, and he freely told his supervisors, and co-workers of the plans to take time off for surgery in the future.

25.     It was reasonable for the plaintiff to rely on the statements of Doug Meyer.

26.     The plaintiff was fired because he took medical leave and was planning to take medical leave in the future.

27.     The plaintiff took the week of July 30, 2003 to July 4, 2003 as vacation time which was approved by his supervisor.

28.     Between June 26, 2003 and July 7, 2003 the plaintiff again informed the defendant of his request for medical leave and kept the defendant informed of his medical status, appointments, and prognosis, including the probable need steroid injections, disc-o-grams,

and surgery.

29.	On July 7, 2003 the plaintiff was working in a limited capacity.

30.	On July 7, 2003 the plaintiff again informed his supervisors and co-workers of his medical status including the need for leave to have surgery due to the fact that conservative treatments were not working.

31.	On July 8, 2003 the plaintiff drove to Boston for a sales meeting with customer Fleet Bank, and again informed his supervisors and co-workers of his medical status including the need for leave to have surgery.

32.	Between July 9, 2003 and July 15, 2003 the plaintiff again informed his supervisors and co-workers of his medical status including the need for leave to have surgery because conservative treatments were not working.  He also informed his supervisors and co-workers that he needed another set of steroid injections scheduled for July 15, 2003.

33.	On July 15, 2003 the plaintiff had his second set of steroid injections.

34.	On July 16, 2003 the plaintiff again informed his supervisors and co-workers of his medical status, including the need for leave to have surgery because conservative treatments were not working.  Additionally, on that day he was visibly in a great deal of pain which was noticed by his co-workers and supervisors.

35.	Between June 17, 2003 and July 16, 2003 the plaintiff repeatedly informed the

defendant that leave was required for back surgery, related procedures, and post surgery healing.

36.     Between June 17, 2003 and July 16, 2003 the plaintiff answered all inquiries posed to him by the defendant about his required back surgery and leave.

37.     On July 17, 2003 the plaintiff was fired.

38.     The defendant violated 29 U.S.C. § 2617 et seq., the Family Medical Leave Act of 1992 because the defendant denied the plaintiff rights he was entitled to under the Act in that the defendant:

    a.     Interfered with the plaintiff's rights under the Act;

    b.     Failed to inform the plaintiff of his rights under the Act; and

    c.     Denied the plaintiff leave under the Act.

39.     As a result of the defendant's conduct the plaintiff has suffered, and will continue to suffer substantial lost wages and benefits including health, drug plan, pre-tax contribution for health care, vision, short term disability, long term disability, dental, life insurance, 401K, stock option, stock purchase 423 plan, paid vacation, tuition reimbursement, employee referral bonus, sick days, paid holidays, floating holiday, bereavement, and severance pay.

**SECOND COUNT**     **(Family Medial Leave Act, 29 U.S.C. § 2617 (a)(1)(A)(iii), retaliation claim)**

1-39.   Paragraphs 1- 39 of the First Count are incorporated as paragraphs 1-39 of this the Second Count.

40.   The defendant violated the Family Medical Leave Act by firing the plaintiff in retaliation of the plaintiff's past, present, or future enforcement of this rights under the Act.

41.   As a result of the defendant's conduct the plaintiff has suffered, and will continue to suffer substantial lost wages and benefits including health, drug plan, pre-tax contribution for health care, vision, short term disability, long term disability, dental, life insurance, 401K, stock option, stock purchase 423 plan, paid vacation, tuition reimbursement, employee referral bonus, sick days, paid holidays, floating holiday, bereavement, and severance pay.

**THIRD COUNT**   **(Workers Compensation Retaliation, Connecticut General Statute 31-290a)**

1-39.   Paragraphs 1- 39 of the First Count are incorporated as paragraphs 1-39 of this the Third Count.

40.   The defendant fired the plaintiff or otherwise discriminated against him in retaliation for the plaintiff's past, present, or future filing of a worker's compensation claim or the exercise of the plaintiff's rights under the Connecticut Workers' Compensation Act.  This conduct violated the Connecticut Workers' Compensation Act's anti-discrimination

provision, Connecticut General Statute 31-290a.

41. As a result of the defendant's conduct the plaintiff has suffered, and will continue to suffer substantial lost wages and benefits including health, drug plan, pre-tax contribution for health care, vision, short term disability, long term disability, dental, life insurance, 401K, stock option, stock purchase 423 plan, paid vacation, tuition reimbursement, employee referral bonus, sick days, paid holidays, floating holiday, bereavement, and severance pay.

42. As a further result of the defendant's conduct the plaintiff has suffered, and will continue to suffer emotional distress as a result of his discriminatory discharge.

**FOURTH COUNT**   **(Breach of Implied Contract)**

1-39. Paragraphs 1- 39 of the First Count are incorporated as paragraphs 1-39 of this the Fourth Count.

40. On or about May 14, 2003 the plaintiff was given a performance improvement plan that set forth goals for the plaintiff to meet.

41. The performance improvement plan set goals in terms of performance quotas and timeframes.

42. Shortly after that date the plaintiff began work on the performance improvement plan and the goals set forth in the plan.

43. Between May 14, 2003 and July 17, 2004 the plaintiff worked diligently on the goals set forth in the performance evaluation plan.

44. As of July 17, 2004 the plaintiff was well ahead of schedule to meet all of the goals in the performance improvement plan, and had in fact already exceeded some of the objectives in the plan.

45. The defendant, by its words, conduct and actions conducted business in a manner whereby the defendant and plaintiff agreed to the following:

 a. The defendant company followed a progressive discipline policy wherein the plaintiff would receive a series of warnings and opportunity to improve performance or other work related issues prior to termination;

 b. The plaintiff could remain out of work for medical reasons associated with his back injury so that plaintiff could receive necessary medical treatment;

 c. The plaintiff was entitled to sick, vacation and personal time while employed by defendant;

 d. The plaintiff need not worry about work related issues and should concentrate on recovering from back injury;

 e. The plaintiff would not be fired for poor performance as long as the plaintiff satisfied the performance evaluation plan.

      f.      The plaintiff would not be fired for poor performance until at least the review period expired which was the time he had to meet the quotas in the performance evaluation plan; and

      g.      The plaintiff would not be fired for not making his sales quota since it is the custom of the defendant to set sales quotas at unreasonably high levels which can not be met under normal conditions.

46.      The defendant failed to abide by the terms and conditions of the foregoing implied contract and as a result of said failure plaintiff's employment was terminated.

47.      As a result of the defendant's conduct the plaintiff has suffered, and will continue to suffer substantial lost wages and benefits including health, drug plan, pre-tax contribution for health care, vision, short term disability, long term disability, dental, life insurance, 401K, stock option, stock purchase 423 plan, paid vacation, tuition reimbursement, employee referral bonus, sick days, paid holidays, floating holiday, bereavement, and severance pay.

**FIFTH COUNT**      **(Promissory Estoppel)**

1-39.      Paragraphs 1- 39 of the First Count are incorporated as paragraphs 1-39 of this the Fifth Count.

40.      The defendant, by its words, conduct and actions made the following promises to the

plaintiff:

    a.    The defendant company followed a progressive discipline policy wherein the plaintiff would receive a series of warnings and opportunity to improve performance or other work related issues prior to termination;

    b.    The plaintiff could remain out of work for medical reasons associated with his back injury so that plaintiff could receive necessary medical treatment;

    c.    The plaintiff was entitled to sick, vacation and personal time while employed by defendant;

    d.    The plaintiff need not worry about work related issues and should concentrate on recovering from back injury;

    e.    The plaintiff would not be fired for poor performance as long as the plaintiff satisfied the performance evaluation plan;

    f.    The plaintiff would not be fired for poor performance until at least the review period expired which was the time he had to meet the quotas in the performance evaluation plan; and

    g.    The plaintiff would not be fired for not making his sales quota since it is the custom of the defendant to set sales quotas at unreasonably high levels which can not be met under normal conditions.

41.The promises of the defendant were reasonably expected to induce action or forbearance on the part of the plaintiff and did induce action or forbearance on the part of the plaintiff.

42.The plaintiff relied upon the defendant's promises to his detriment as he took time off for medical leave.

43.The defendant failed to fulfill the forgoing promises, resulting in the plaintiff's termination.

44.As a result of the defendant's conduct the plaintiff has suffered, and will continue to suffer substantial lost wages and benefits including health, drug plan, pre-tax contribution for health care, vision, short term disability, long term disability, dental, life insurance, 401K, stock option, stock purchase 423 plan, paid vacation, tuition reimbursement, employee referral bonus, sick days, paid holidays, floating holiday, bereavement, and severance pay.

**SIXTH COUNT****(Punitive damages for Workers Compensation Retaliation, Connecticut General Statute 31-290a.)**

1-42.Paragraphs 1-42 of the Third Count are incorporated as paragraphs 1-42 of this the Sixth Count.

43.The forgoing conduct of the defendant was performed with a reckless indifference of the rights of others or an intentional and wanton violation of those rights.

WHEREFORE, the plaintiff claims fair, just, and reasonable money damages.

                    THE PLAINTIFF
                    PETER LEE

BY_____
                    Peter J. Bartinik, Jr.
                    Federal Bar # 14208
                    Bartinik, Gianacoplos, Bartinik,
                    Bartinik & Grater, P.C.
                    100 Fort Hill Rd.
                    Groton, CT 06340
                    Ph 860 445 8521
                    Fax 860 445 5873
                    Email pjb@grotonlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER LEE | : | CIVIL ACTION NO: |
| | : | |
| V. | : | |
| | : | |
| ONESOURCE INFORMATION | : | |
| SERVICES, INC. | : | DECEMBER 17, 2004 |

## **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF CLAIMS:

1. Money damages.

2. Back pay.

3. Front pay.

4. Re-establishment of employee benefits.

5. Costs and reasonable attorneys' fees under General Statute 31-290a(b), and 29 U.S.C. 2617(a)(3).

6. Liquidated damages under 29 U.S.C. 2617(a)(1)(A)(iii).

7. Punitive damages under General Statute 31-290a(b).

8. Prejudgment interest 29 U.S.C. 2617 (a)(1)(A)(ii).

9. Interest under General Statute 37-3a.

10. Such other relief as the Court may deem proper.

Dated at Groton, Connecticut on December 17, 2004

                THE PLAINTIFF
                PETER LEE

BY _____
        Peter J. Bartinik, Jr.
        Federal Bar # 14208
        Bartinik, Gianacoplos, Bartinik,
        Bartinik & Grater, P.C.
        100 Fort Hill Rd.
        Groton, CT 06340
        Ph 860 445 8521
        Fax 860 445 5873
        Email pjb@grotonlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER LEE | : | CIVIL ACTION NO: |
| | : | |
| | : | |
| V. | : | |
| | : | |
| ONESOURCE INFORMATION | : | |
| SERVICES, INC. | : | DECEMBER 17, 2004 |

## JURY TRIAL DEMAND

The plaintiff demands a trial by jury.

Dated at Groton, Connecticut on December 17, 2004.

                    THE PLAINTIFF
                    PETER LEE

BY _____
                    Peter J. Bartinik, Jr.
                    Federal Bar # 14208
                    Bartinik, Gianacoplos, Bartinik,
                    Bartinik & Grater, P.C.
                    100 Fort Hill Rd.
                    Groton, CT 06340
                    Ph 860 445 8521
                    Fax 860 445 5873
                    Email pjb@grotonlaw.com